Case 16-2244 and Case 16-2369, John Moody et al. v. Michigan Gaming Control Board et al. Argument not to exceed 15 minutes per side. Mr. Geisler, you may proceed. Good morning, Your Honors. May it please the Court, Assistant Attorney General Jason Geisler on behalf of the State Appellants this morning. I'm going to be reserving three minutes for rebuttal time, Your Honor. Okay, that's fine. Thank you. In its first opinion in this case, the Court remanded on three issues. First, did the drivers request hearings to support their no-hearing due process claim on the exclusions? Yes, they requested a hearing and one was provided. They admitted this on remand and they abandoned that no-hearing claim. Second, did the drivers' no-hearing due process claims involve clearly established rights? No, because the drivers have not provided any cases that told the regulators to review the drivers' license applications as exclusion appeal requests or that they even had to be a right on the track at all. And finally, did the drivers' Fifth Amendment claims involve clearly established rights? And the argument we are making today is no, because no case law notified the regulators that they would be violating the Fifth Amendment by suspending the drivers for failing to cooperate without first providing or offering clear evidence to the community. To determine whether something is clearly established, and I'm going to be turning first to the due process claim, the Supreme Court recently ruled this year in the case of White v. Pauly what was meant by something that is clearly established. And that was a, in defining what was meant by that notion of clearly established. And what the court determined was that you can't define the constitutional right at issue with a high level of generality. Instead, the court must find or identify a case that is factually analogous or under similar circumstances as the one before it. And in this case, no hearing due process claim does not involve a clearly established right, because the drivers have not provided any case law to this court that requires those regulators to view a license application to become a driver, and that would be a violation of the Fifth Amendment as an appeal for their exclusions. And simply no case exists on that point. Could you just take a moment and address the nature of what appears to have been the hearing on April 25, 2013? Certainly. I was a little bit confused by the record, actually. I can't tell whether the previous panel was aware of that hearing, and also whether that hearing dealt with the suspensions, the exclusion orders, both. Thank you, Mr. Chief Judge. Actually, to back up, that hearing, you're correct, the panel the first time around did not address it. And I don't know if they were aware of it being in the record or not. Nonetheless... Was it presented to them in argument? Do you recall? If I recall correctly, I believe it was, Your Honor. But nonetheless, the purpose of that hearing was twofold. First, was the Michigan Game and Control Board authorized by law to suspend the drivers under those circumstances? But it also dealt with the fact that in November of 2012, they asked for a hearing to commence on both of those particular issues. So it did deal with the exclusion as well. What was the result of that hearing, then? The result of that hearing was that there was a proposal for decision that was issued by the Administrative Law Judge in July of 2012, or I'm sorry, July of 2012. The Administrative Law Judge concluded and made a recommendation to the Game and Control Board that the Game and Control Board was both correct in its decision to suspend the drivers under those circumstances, but also to exclude them. And as a result of that, a final order was drafted by the Michigan Game and Control Board in October of 2013, and the drivers did not appeal that decision. So are they permanently excluded or just for a period of time? Well, the purpose of the exclusion is to keep them off the track, and if and when they decide to address the circumstances that led to that exclusion, it would be lifted. And so in this case, they did that in 2014. They met with the Game and Control Board personnel. They answered certain questions regarding the investigation that was pending at that time. The Game and Control Board was satisfied with the answers that were given. So they are currently licensed by the Game and Control Board. They're currently licensed and they are no longer excluded? That is correct, Your Honor. And it's also important to note that in addition to there being no case law on the issue of viewing an application for a driver's license, the district court erred when it declined to grant qualified immunity to both defendants Al Ernst and John Lesnau. And with regard to Mr. Ernst, it was determined that because he wrote some letters in response to the driver's applications, that that was sufficient to establish some personal involvement in the case. We do not believe that there was sufficient personal involvement because, again, what the court has shown, what they haven't shown at this point in time, is that at the time that he wrote the letter to the drivers responding to their license applications, was there any case law that would put him on notice that required him to review those driver's applications as appeal requests to the exclusions? And the answer is no. And the same thing with John Lesnau. The court refused to grant qualified immunity to Mr. Lesnau for a report that he submitted on whether to lift one of the four drivers' exclusions. Now, it should be noted that Mr. Lesnau didn't have the authority to lift that exclusion. It was simply left to the executive director to make that call based on that recommendation. But, again, his report first, as a matter of law, only addressed one of the three plaintiffs. So as to three of those plaintiffs, he should have been granted qualified immunity because he didn't even weigh in on those issues. Also, there is no case law to show that issuing a mere recommendation in a report constitutes a denial of due process. Because they have to show that those two individuals did something to deny them a hearing. And they haven't done that in this case. Certainly, there's no case law that would point to that. The same thing as to the Fifth Amendment. As I noted at the outset, the regulars are entitled to qualified immunity on the Fifth Amendment issues because there is no case law that would have notified them that by suspending their licenses, that by excluding them for failing to grant their license, that their first offering immunity would violate the Fifth Amendment. What about Lefkowitz v. Turley and Chavez v. Martinez? Lefkowitz v. Turley was the architect's case from 1973 where the court examined a situation involving some architects that refused to waive their Fifth Amendment rights. And because they didn't sign off on some waiver that would allow the government to then go ahead and use their testimony in a subsequent criminal case, the Supreme Court determined that that was contrary to the Fifth Amendment. But that's not what we have in this particular case. It's not factually analogous because in this case... I'm sorry, I'm confused. That is correct, Judge Batchelder. It does present a situation of compelled questioning. But the Garrity line of cases, Garrity and its progeny, including Gardner v. Broderick, the Uniform Sanitation Men case, all provide for a constitutional framework where they say that in that situation, it is okay to present a compelled questioning situation so long as you don't require a waiver of the Fifth Amendment during that questioning. And that's not what happened in this case. There was no waiver that was required by the drivers. No, but the drivers were essentially fired or suspended because they didn't answer the questions, right? Correct. And that's absolutely acceptable under the framework of Garrity and its progeny because under that constitutional framework, the Supreme Court has developed a, for lack of a better term, a formula that allows for those situations to happen because anything that those drivers say at the time of that compelled questioning situation is automatically barred from use in a subsequent criminal action. And it should be noted in this case that they were never criminally charged in this case. So nobody, so you're saying the employee doesn't have to invoke his Fifth Amendment rights, but he can just go ahead and answer the questions and then Garrity says that the answers cannot be used in a criminal prosecution? Is that your position? Yes. Well, our position is that Garrity would automatically prohibit the use of any of those statements in a compelled questioning situation. Without the individual invoking his Fifth Amendment privilege? Well, whether they have to invoke it or not, I don't think it's an issue before this Court because obviously they did in this situation, but it still doesn't change the result of even if they do in that situation, Garrity, even if the drivers did assert the Fifth Amendment or didn't, Garrity prevents any subsequent statements being, or any of those statements derived from that compelled questioning situation from being used in a criminal prosecution. So I think you can make the argument, and we're certainly taking the position today, that given that Garrity and his progeny allows or automatically attaches immunity to any of those statements, that it's not clearly established that from the first time Garrity was charged, Garrity was not charged. It's clear from the first time around that there was a duty on the part of the regulators to offer immunity to those drivers. And certainly it should be noted, and it's worth noting for the record, that in this case, the regulators didn't even have the authority to make an offer of immunity. And I think when you take a look at the cases involving Garrity and his progeny, what it suggests is in those situations, that's why those drivers were charged. Statements are automatically immune from subsequent use because of the fact that you might have a factual situation where they're not authorized to offer up immunity, which is what the case is here. Who would have the authority to offer immunity, do you know? I don't know if it would be a criminal prosecutor, but in the administrative framework, nobody at the Game and Control Board has that authority. Thank you. Mr. Davis. Regarding the issue of no hearings and due process, initially the state took the position that the challenge to the original hearing was that the exclusions had to occur within 14 days. They abandoned that position. There is no deadline for challenging an exclusion. Therefore, when the plaintiffs decided to assert that right to challenge the exclusion, they had to be given a hearing within 14 days. That didn't happen. There were various procedural matters and consensual agreements between counsel. When did you first raise the 14-day issue? When did you raise it, that you needed to have a hearing within 14 days? I do not believe that. Well, I raised it when we first challenged the exclusions. That was in early 2013. I'm wondering when you raised the timeliness of the hearing in the federal court proceedings. Was this something you raised in the district court, or are you raising it first in front of us? No, it was raised in the district court, but it wasn't raised. It was raised in the complaint, but it wasn't the hearings. At that time, the argument still was by the defendants that it didn't have to do with the filing. It had to do with the hearing itself. The administrative preclusions, whether they could lawfully be accomplished by the regulators, that is, the stewards. These are guys who judge horse races. They can't grant or offer immunity. Only an attorney general could do that, and only a judge could grant it. Therefore, the idea that, as was bandied about by the defendants on Bonk after Moody won and in the Supreme Court and was rejected, is the law of the case. They simply couldn't do it, and therefore the assertion of the Fifth was entirely appropriate in an administrative proceeding, as has been law for at least 40 years. They just simply violated that. With regard to filing their applications for licensing, what could it be other than a challenge to the exclusion? As long as they were excluded, they couldn't be licensed. They couldn't get a hearing on the exclusion and were wrongly told that the time had passed. Therefore, it was a de facto permanent exclusion. You can't apply because you're excluded, and you can't challenge the exclusion because the time to challenge it has passed. They've pretty much conceded that point now. So on the exclusion, are you excluded in perpetuity when an exclusion order is issued by the relevant body, or is it a year-to-year thing the way a license is a year-to-year thing? The law isn't clear, but if it is unchallenged, the rule under the racing rules is that a suspension is for 90 days, but there is no specific rule regarding the length of an exclusion. Therefore, I believe that it requires a challenge, and the challenge can be made at any time, and the hearing is supposed to be held within 14 days. Regarding Ernst and Lesnau, they're both investigators in the same office for the MGCB. They cooperated on this matter throughout. Ernst wrote the letter, which is referenced in the brief, and Lesnau, admitted by the defendants, wrote a negative report and recommendation. In addition, Lesnau refused to meet with the plaintiffs after their suspension-slash-exclusion, and then when he did agree to meet with one of them, he wouldn't allow that person to bring an attorney. Therefore, he effectively blocked any informal resolution of whatever dispute there was. Please remember, there was never any substance to any of the allegations, never a criminal prosecution. The clerk, the cop in charge of this case, pleaded a rogue investigation, found nothing, intimidated witnesses, coerced equivocal statements, and the Michigan State Police themselves say, one, the case number he put on it is false, and two, there's no report of this in the Michigan State Police records. Completely rogue operation. Regarding the issue of invoking the Fifth Amendment, I think, since Lefkowitz v. Turley in 1973 and Lefkowitz v. Cunningham in 1977, you have to both offer and grant immunity in an administrative proceeding if you want to compel testimony. One is not enough. Where in any case is it stated that you have to offer immunity, as opposed to if the individual asks for immunity, then you have to grant it? But where do you have to offer it in any case that clearly establishes that? I think, unless I misread it, I think Turley, Lefkowitz v. Turley and Lefkowitz v. Cunningham established that. But originally, it was thought that an offer was sufficient. As it developed, you have to do both, offer it and give it, or else you can't compel the testimony. With regard to severe consequences, if this Court doesn't act before August 1, John Moody will lose his farm. Krista Harmon has been harmed in the argument regarding the amendment of the complaint. By being disqualified from racing, John Moody has run into trouble in three different states, even after he was reinstated in May of 2014. In the horse racing community, this is a very closely watched and important case, and these plaintiffs do now and have in the past suffered severe consequences, which is one of the elements of making out the complete Fifth Amendment claim with damages. But your opponent says that they are all currently licensed and no longer excluded, is that correct? That's correct. So is that as a result of that April 2013 hearing, or did subsequent events happen that are not in our record? No, it happened in May of 2014 as a result of negotiations with the Attorney General. We agreed that it would either cut off or diminish damages. In fact, it didn't cut them off because there were continuing consequences, but it at least allowed them to go back to work, and today John Moody is the leading harness racer at a couple of the racetracks in Michigan. But so what, in terms of what they were doing and could do and can now do, the harm continues. Well, I would be pleased to address any questions, but if there aren't more... Thank you, Your Honor. There's a few things I want to address on rebuttal, just to address some of the things that are not simply supported by the record that the drivers have put forth today. The first is, in addressing your question, Judge Moore, that the exclusion does last in perpetuity unless and until they do something to request a hearing, and that didn't happen until November of 2012 when they first did that. As to how they became re-licensed, it wasn't as a result of attorney negotiations. That was because they finally went to the Game and Control Board and addressed what led to their exclusions, where the Game and Control Board felt comfortable to lift those exclusions. The Attorney General's Office has nothing to do with that. We don't make that decision. We have no authority on whether somebody is excluded or that exclusion is lifted. That is entirely within the scope of the duty of the Game and Control Board's Executive Director. As to the timeliness claim, that was not raised in the initial proceedings before the District Court. It was first raised on remand. That's where it first came up, because their first claim, Count 4 of the complaint, addresses a no-hearing claim. And it wasn't until they did receive that hearing that they pivoted the claim and brought a new claim that said, yes, we did receive the hearing, but it wasn't constitutionally timely. And they relied on a state administrator rule, which does not define the parameters of due process, to substantiate that claim. But the District Court, to its credit, correctly rejected that attempt to make a new claim because it wasn't properly before the court. There were also some inconsistencies. The drivers have come here today, and they present the argument that Lefkowitz v. Turley stands for the proposition that it's been clearly established that they must both offer and grant immunity, which is interesting because when we originally filed a petition for cert, in opposition to that petition for cert, the drivers took the exact opposite stance by saying the Sixth Circuit did not require an offer of immunity. That's never been the case. Lefkowitz doesn't stand for that proposition. But here they are today suggesting in their second brief that, yes, that requirement of offering immunity is in play. That must occur. It's clearly established. But even they recognize in their fourth brief that they took a different approach by suggesting, well, the duty to offer immunity doesn't fall with anybody in the administrative proceedings because that's silly, because they don't have that authority. They recognize and they concede that the Gaming Control Board has no authority to grant immunity. That's why Gearty provides it automatically as a right of law. And that's why it addresses that, because of those situations where you do have somebody that doesn't have the ability to offer that immunity. Thank you, Mr. Geisler and Mr. Davis for your arguments today. We very much appreciate them. Thank you for the assistance with the hearing. No problem at all.